HULBERT (MARSH v.). See Case No. 9,116.

HULBURD (VAN ANTWERP v.). See Cases Nos. 16,826 and 16,827.

———

## Case No. 6,855.

HULBURT et al. v. SQUIRES et al.

[Brunner, Col. Cas. 13;[1] 1 West. Law Month. 443.]

Circuit Court, N. D. Ohio. Jan., 1859.

PAYMENT OF NOTE HELD BY BANK FOR COLLECTION—WHAT CONSTITUTES.

Where one of three makers of a promissory note, payable at the office of a banking association, thirteen days before the note became due, deposited with the company at their office a sum of money sufficient to meet the note, and received from the cashier a certificate of credit for that sum, "to pay your note to" the payees named in the note, and the bank failed on the day the note fell due, having, from the time of the deposit up to the day of failure, constantly more than sufficient funds on hand to pay the note: and after the deposit of the money, and before the note became due, it was deposited with the company, who held it up to the day of failure, with authority to receive payment upon it, but no further application of the money deposited had been made to its payment, held, that the note remained unpaid, and that the makers were liable upon it to the payees.

At law.

Paine & Wade, for plaintiffs.
S. B. & F. J. Prentiss, for defendants.

———

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

WILLSON, District Judge. This case was tried by a jury, and a verdict rendered for the plaintiffs.

The defendants have moved for a new trial upon the following assigned causes:—1st. That the verdict was against the evidence. 2d. That the verdict was against the law. 3d. That the court erred in refusing to charge the jury as requested by the counsel for the defendants.

The plaintiffs, upon the trial, produced in evidence a promissory note, of which the following is a copy:—

"Monroeville, Ohio, May 9, 1857.

"$600. Six months after date, for value received, we jointly and severally promise to pay to the order of Hulburt, Sweetzer & Co., at the office of the Norwalk Savings Company, six hundred dollars, with interest.

"Signed { Douglass Squires,
           { John Clary,
           { Lewis Zahn."

And thereupon the plaintiffs rested their cause.

The facts disclosed by the defendants' testimony were that the note in suit was the last of three notes of equal amount, bearing the same date, payable at the same place, and given by the defendants in the settlement of one and the same transaction. Each of the two first notes, which severally matured on the 12th of July and the 12th of September, 1857, was sent by the holder to the Norwalk Savings Company for collection, and received by it before maturity. It appears that these two notes were paid by the defendants, who deposited sufficient money with the savings company for that purpose, comprising a deposit on the 30th of June, and one on the 8th of July, 1857, as applicable to the first note, and another on the 11th of September, 1857, as applicable to the second. The note in suit matured on the 12th of November, 1857. The plaintiffs indorsed it over to C. L. Latimer, treasurer of said savings company for collection, who received it a day or two before it fell due. Just before its receipt by him, to wit, on the 30th day of October, 1857, one of the defendants made a deposit with said savings company, and took from it the following paper:—"Office of Norwalk Savings Company, Norwalk, Ohio, Oct. 30, 1857. Mr. D. Squires—Dear Sir: We credit you this day six hundred and eighteen dollars, to pay your note to Hulburt, Sweetzer & Co.—$618. Yours truly, (Signed) J. S. Cole, Cashier." On the 12th of November, 1857, the very day on which this note became due, the Norwalk Savings Company failed, and at which time Latimer indorsed and delivered over the note to the Bank of Norfolk for collection. And it further appeared in evidence that from the 30th of October to the 12th of November, the savings company had continuously on hand cash means more than sufficient to pay the note.

Upon this evidence the court instructed the jury in substance that when a note is payable in a specified time, the law neither gives the maker the right to pay, or imposes on the holder the obligation to receive and apply the money in discharge of the note before its maturity. That when the relation of principal and agent exists, the conduct of the agent in all matters pertaining to his employment within the scope of his authority is conclusive upon his principal; and that in this case, if that relation existed between Squires and the savings company, and the latter failed to apply the money of its principal in its possession to the discharge of the note, then there was no payment, and the plaintiff ought to recover.

The material question presented by this motion is whether, under all the circumstances of the case, this note was paid by the defendants' deposit of the six hundred and eighteen dollars with the Norwalk Savings Company. It is claimed by the counsel for the defendants that inasmuch as before and on the day of the maturity of the note it was in the hands of the savings company, with authority to receive payment upon it, and the money to pay it also in the possession of said company, that the duties growing out of this condition of things imply payment of the note, and that then and thereafter the company held the note as the agent of the defendants, and the money as the agent of the plaintiffs. This position of counsel cannot be maintained. Before the note was received by the savings company for collection, the defendant Squires deposited the money with that institution to his own credit, and this credit was so entered upon the books of the company. Squires controlled the money, and although he constituted the company his agent, to dispose of the fund for a specific object, yet until that disposition was made he not only controlled the money but could also revoke the agency. The original parties to the note, by making it payable at the office of the savings company, did not create that institution the agent of either of them. The company was not, by virtue of the contract of the parties, the agent to pay, or the agent to receive payment. The makers of the note were not required to place funds in the possession or under the control of the savings company to meet their obligation. When the paper matured they had a right to go to the place of payment, either in person or by an agent, tender the amount due, and take up and cancel the evidence of indebtedness. If the note was not then and there ready to be delivered up on such tender of payment, the effect would have been to stop the accumulation of interest, and in case of suit upon the note the maker could plead the tender, bring the money into court, and be discharged from further liability.

It is a principle of law, well settled by a course of uniform decisions, that the maker of a promissory note has not the right to pay, nor is the holder obliged to receive payment before the note matures. This money was deposited with the savings company before the note came into its possession, and there could be no legal implication of payment, especially as at that time the company was not in fact the agent of the plaintiffs. and by them authorized to receive the money on their account. But it is said, this company had held for collection the two previous notes, and upon those notes had received payments before they became due, and that to this conduct of the company the plaintiffs never objected, but on the contrary ratified and approved it by their reception of the money thus paid. Such, however, was not the proof. The evidence simply established the fact that money was deposited for the purpose of paying those two notes; but whether it was received and applied in payment of the paper before maturity did not appear. And had it so appeared, it would not, in our opinion, have been conclusive of a course of dealing between these parties that would have changed a rule of law governing their rights and duties in the premises. The three notes were all negotiable commercial paper. They came to the place of payment through different channels, and were indorsed by different parties. There was nothing on the notes to indicate their uniform ownership, or that they belonged to the plaintiffs to whose order they were originally made payable. If there had been a course of dealing understood and acted upon by these parties, by which the defendants were accustomed to pay like notes belonging to the plaintiffs at the savings company's office before they fell due, there would be force in the presumption that like authority was granted to pay this note in the same way. This course of dealing, however, the proof failed to establish. On the contrary, it is clear the defendants acted upon no such understanding in making the deposit, as in that case they would have paid the money to the credit of the plaintiffs and taken up the note, or obtained an acquittance therefor from the company.

The case presented then is simply this: The defendants deposited money with the Norwalk Savings Company to their own credit, with which they intended to pay this note when it should fall due. Now, it cannot be disputed that immediately upon the credit being given upon the books of the savings company, that institution became debtor to the depositor; and that it was not thereafter competent for the company, as agent for the plaintiffs, to pay the note by a transfer of this credit on its books to the plaintiffs. Such a transaction would have been nothing more than the simple case of the agent "writing off" money due from him to the debtor, by way of discharging the debt due from the

debtor to the agent's principal. It is well settled by authority that such a transfer of credit cannot be made by an agent.

Russell v. Bangley, 4 Barn. & Ald. 398, was the case of a policy of insurance delivered to an agent to adjust the loss and collect the money from the underwriter. The agent adjusted the loss, and being himself at the time indebted to the underwriter, charged him with the amount of the loss in account, and credited the assured. The agent having failed before accounting to his principal, the question was whether, in fact, the debt was paid. Chief Justice Abbott in that case held the general rule of law to be, that if a creditor employs an agent to receive money of a debtor, and the agent receives it, the debtor is discharged as against the principal; but if the agent, instead of receiving money, "writes off" money due from him to the debtor, then the latter is not discharged. That decision was in accordance with the principle established in the leading case of Todd v. Reid [Id. 210], where it was held that the agent of the assured was only entitled to receive payment in money; and that the attempt to pay the debt of one person with the money of another could not be sanctioned. The same principle was again affirmed in the late case of Underwood v. Nicholls, 33 Eng. Law & Eq. 321.

This doctrine is well settled and established in England, and is not contravened by any decision of the courts in the United States. We are therefore of the opinion that in its charge to the jury the court committed no error, and that the verdict rendered was in accordance with the law and the evidence. Judgment upon the verdict.